UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 20-CV-4315 (AMD) (RER)

———————————

Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry,

Petitioner,

versus

High Volt Electric Corp. of America,

Respondent.

———————————

**REPORT & RECOMMENDATION**

July 7, 2021

———————————

To The Honorable Ann M. Donnelly
United States District Judge

**RAMON E. REYES, JR., U.S.M.J.:**

On September 15, 2020, Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry ("Petitioner") filed this petition to confirm an arbitration award against High Volt Electrical Corp. of America ("Respondent"). Petitioner seeks to: (1) recover unpaid contributions and attendant damages owed by Respondent pursuant to Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. § 1132(a)(3), and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended 29 U.S.C. § 185; (2) confirm and enforce an arbitrator's award rendered pursuant to a collective bargaining agreement ("CBA") between the parties; (3) be awarded interest from the date of the Award through the date of judgment; and (4) be awarded attorney's fees and costs for

1

the Petition. For the reasons set forth below, I respectfully recommend that the arbitration award be confirmed, and that Petitioner be awarded $818,120.16, itemized as follows: (1) $566,734.14 in delinquent contributions for the payroll weeks ending August 7, 2019 through and including July 29, 2020 and $16,405.22 in interest thereon; (2) $80,010.84 in delinquent DSP contributions and $1,972.87 in interest thereon; (3) $18,378.09 in additional interest; (4) $129,329 in liquidated damages; (5) $4,250 in fees and costs related to the arbitration; (6) $600 in attorney's fees for this Petition; and (7) $440 in related costs. I additionally recommend that the Clerk of the Court calculate prejudgment interest on the arbitrator's award at the rate set forth in Section 6621 of the Internal Revenue Code from August 18, 2020 to the date of this court's judgment; and post-judgment interest be calculated at the rate provided by 25 U.S.C. § 1961(a) from the date final judgment is entered until the date the judgment is paid.

## BACKGROUND

Respondent, a New York corporation, is an electrical contracting company located in East Elmhurst, New York. (Dkt. No. 1 ("Pet.") ¶ 13; Dkt. No. 1-9 ("Arbitrator's Award") at 1). On April 26, 2019, Respondent entered a CBA with the Local Union #3 of the International Brotherhood of Electrical Workers ("the Union") effective April 10, 2019 to April 13, 2022. (Pet. ¶¶ 14–17; Dkt. No. 1-1 ("Letter of Assent"); Arbitrator's Award at 1). The CBA requires Respondent to make weekly contributions to a variety of ERISA[1] and Non-ERISA[2] employee

---

[1] Each ERISA plan is an employee benefit multi-employer plan within the meaning of 29 U.S.C. §§ 1002(3); 1002(37) and is also jointly administered by a board of trustees that is comprised of labor and management representatives in accordance with 29 U.S.C. § 186(c)(5). (Pet. ¶¶ 5, 7). These plans include: the Pension, Hospitalization and Benefit Plan of the Electrical Industry (the "PHBP"); the Dental Benefit Fund of the Electrical Industry (the "DEN"); the Deferred Salary Fund of the Electrical Industry (the "DSP"); the Educational and Cultural Trust Fund of the Electrical Industry (the "E&C"); the Annuity Plan of the Electrical Industry (the "ANN"); the Vacation-Holiday Unemployment Plan of the Electrical Industry (the "VHUT"); the Health Reimbursement Account Plan of the Electrical Industry ("HRAP"); and the National Employees Benefit Fund (the "NEBF"). (Arbitrator's Award at 2).

[2] Pursuant to the CBA, Petitioner also collects: due assessments on behalf of the Union; employee loan payments due to the Union; and contributions to the Electrical Employers Self Insurance Safety Plan ("EESISP"); the Committee on

benefit plans administered by Petitioner[3], and to submit weekly payroll reports stating the name, gross wages, and hours worked for each worker on behalf of whom Respondent made contributions. (Pet. ¶¶ 4–8; 18). The CBA also binds Respondent to a Collection Policy and arbitration procedures to collect delinquent contributions. (Pet. ¶¶ 21–22).

Respondent failed to remit the required contributions to the respective benefit plans for payroll weeks ending August 7, 2019 through July 29, 2020. (Pet. ¶¶ 28, 32). Pursuant to the Collection Policy, Petitioner initiated arbitration to recover the contributions. (*Id.* ¶ 29; Dkt. No. 1-4 ("Collection Policy")). On August 4, 2020, a hearing was held on the matter before the designated arbitrator (Pet. ¶ 32; Arbitrator's Award at 3). Petitioner provided proper notice to Respondent as required by the CBA and President Mark Astudillo and Project Manager Nanci Merchan appeared on Respondent's behalf. (*Id.* ¶ 29–30; Arbitrator's Award at 3).

At the hearing, Petitioner presented evidence that Respondent failed to remit the required contributions for the above time period. (Pet. ¶ 32; Arbitrator's Award at 3–4). Respondent did not object to any of Petitioner's proffered exhibits and did not dispute the amounts claimed to be owed. (Arbitrator's Award at 4). On August 18, 2020, the arbitrator issued an award, finding Respondent liable for $817,100.16 in deficient funds and attendant damages, itemized and discussed below.

On September 15, 2020, Petitioner filed this Petition to confirm the award. (Entry Dated 9/15/2020). Respondent was properly served with the Summons and Complaint but did not appear. (Dkt. No. 10). Accordingly, on October 30, 2020, Petitioner filed a letter motion requesting that

---

Political Education ("COPE"); the Benefit and Wage Delinquency Fund ("Delinquency Fund") and contributions to fund the operations of the Board ("JT Board"). (Pet. ¶ 5–6; 8–12; Arbitrator's Award at 2–3).

[3] Petitioner is the administrator and fiduciary within the meaning of 29 U.S.C. §§ 1002(16)(A)(i) and 1002(21)(A) for the above-mentioned plans. (Pet. ¶ 5).

3

the petition be reviewed as an unopposed motion for summary judgment. (Dkt. No. 11). On November 19, 2020, Your Honor referred this motion to me.

## **DISCUSSION**

### I. The Court Properly Reviews the Petition as an Unopposed Motion for Summary Judgment

As an initial matter, review of the Petition as a motion for summary judgment is proper. *See e.g.*, *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006) (stating that a petition to confirm an arbitration award "should [be] treated as akin to a motion for summary judgment based on the movant's submissions.") Here, no material issue of fact remains that would preclude summary judgment. The parties entered a collective bargaining agreement in which Respondent agreed to make contributions to a variety of employee benefit funds. (*See generally* CBA art. II). Pursuant to that agreement and as required by the Collection Policy, Petitioner initiated arbitration to recover delinquent contributions. (Collection Policy, art. I, § 3; Pet. ¶ 29). At the arbitration hearing, which was attended by Respondent's representatives, the arbitrator reviewed evidence and determined that Respondent was bound by the CBA and was liable for the damages sought. (*See generally* Arbitrator's Award). Respondent's representatives did not object to the evidence presented and did not dispute the amounts claimed to be owed. (*Id*. at 4). Therefore, Petitioner has established there is "no issue of material fact that would warrant the preclusion of summary judgment." *Trs. Of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. Magnificent Concrete Inc*., No. 17-CV-4285 (DRH) (AYS), 2018 U.S. Dist. LEXIS 120151, at *8 (E.D.N.Y. July 17, 2018).

## II.     The Court Should Enforce the Arbitration Award

The "court's review of an arbitration award pursuant to a collective bargaining agreement is 'very limited.'" *Trs. Of Northeaster Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Excel Installations LLC*, No. 17-CV-4764 (JS) (GRB), 2018 U.S. Dist. LEXIS 29526, at *2 (E.D.N.Y. Feb. 21, 2018) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)), *adopted by* 2018 U.S. Dist. LEXIS 57544 (Mar. 31, 2018). "Confirmation of an arbitration award is a 'summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . . and the court must grant the award unless the award is vacated, modified or corrected.'" *Excel Installations*, 2018 U.S. Dist. LEXIS 29526, at *1 (quoting *D.H. Blair*, 462 F.3d at 110 (citing 9 U.S.C. § 9)). "[I]n evaluating the petition to confirm the [arbitration award], the Court need only ensure that the arbitrator had some grounds on which to grant the damages spelled out in the Award." *Trs. Of Empire State Carpenters Annuity v. Glidewell Therrien Constr., LLC*, No. 15-CV-3855 (ADS) (ARL), 2017 U.S. Dist. LEXIS 28370, at *8 (E.D.N.Y. Feb. 27, 2017), *adopted by* 2017 U.S. Dist. LEXIS 38043 (Mar. 15, 2017) (quoting *Trs. of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co*., No. 07-CV-4211 (NG) (CLP), 2008 U.S. Dist. LEXIS 85734, at *5 (E.D.N.Y. Oct. 23, 2008)). Specifically, "under the LMRA, an arbitration award should be upheld as long as it draws its essence from the collective bargaining agreement." *Trs. Of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Excel Installations LLC*, No. 19-CV-3012 (ERK) (SMG), 2019 U.S. Dist. LEXIS 215950, at *6 (E.D.N.Y. Dec. 13, 2019), *adopted by* 2020 U.S. Dist. LEXIS 14122 (Jan. 27, 2020); *see also Garvey*, 532 U.S. at 509 (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)) (a labor-arbitration agreement should be upheld "if an 'arbitrator is even arguably construing or applying the contract and acting within the

5

scope of his authority.'"). Therefore, "[o]nly a barely colorable justification for the outcome reached by the arbitrator is necessary to confirm the award." *Excel Installations*, 2018 U.S. Dist. LEXIS 29526, at *2 (quoting *D.H. Blair*, 462 F.3d at 110).

Here, the arbitrator had authority to issue the award; and the award both drew its essence from the collective bargaining agreement and provided more than "a barely colorable justification for the outcome reached." *D.H. Blair*, 462 F.3d at 110. Pursuant to the parties' CBA, arbitration was initiated after Petitioner discovered that Respondent had failed to make required contributions. (Pet. ¶ 29; Arbitrator's Award at 1–3). At the hearing, the arbitrator reviewed the CBA, Collection Policy, and other evidence, including a summary sheet setting forth the amounts Respondent allegedly owed Petitioner. (*See* Arbitrator's Award at 2–4). Based on the evidence presented, the arbitrator determined that Respondent was bound to the CBA and "violated the CBA, ERISA and the LMRA by failing to timely remit contributions required by the CBA for the payroll periods ending August 7 2019 through and including July 29, 2020. Respondent raises no defense to [Petitioner's] claims." (*Id*. at 4). The arbitrator then calculated additional damages based upon the provisions of the agreement (*Id.* at 4–6).[4] The arbitrator accordingly determined that Respondent owed Petitioner $817,100.16[5], itemized as follows: $566,734.14 in delinquent contributions for the payroll weeks ending August 7, 2019 through and including July 29, 2020 and $16,405.22 in

---

[4] As noted in the Arbitrator's Award "a portion of the contributions alleged to be due and owing by Respondent are based on estimates since Respondent did not submit payroll reports for certain payroll weeks." (Arbitrator's Award at 4). In accordance with the Collection Policy, for the weeks payroll reports were not submitted, the contributions for those weeks were calculated using the prior week's payroll report. (Collection Policy at 5). The Arbitrator's Award ordered Respondent to submit payroll reports "for all payroll weeks it has thus far failed to submit." (Arbitrator's Award at 4). However, Respondent has not provided these documents. Accordingly, pursuant to the Collection Policy, these estimates should be used to calculate the contributions owed.

[5] The CBA and Collection Policy provide that Respondent shall be responsible for the costs of the collection of delinquent contributions, including liquidated damages, interest, and attorney fees (Collection Policy at 2; CBA art. II §§(g)(3), 12(a), 23; art. III, § 14; art. IX, § 4).

interest thereon; $80,010.84 in delinquent DSP contributions and $1,972.87 in interest thereon; $18,378.09 in additional interest[6]; $129,329 in liquidated damages[7]; $4,250 in attorney's fees, arbitration fees, and administrative fees and costs. (*Id*. at 5–6). Thus, the arbitrator's award was based on the contractual agreements within the CBA. The award has not been vacated, modified, or corrected. (Pet. ¶ 36). Therefore, I respectfully recommend that the Arbitrator's Award be upheld. *Excel Installations*, 2018 U.S. Dist. LEXIS 29526, at *1.

### III.     Pre and Post Judgment Interest

Petitioner requests "interest from the date of the Award through the date of judgment." (Compl. at 9). It is unclear whether Petitioner is requesting interest from the date of the Arbitrator's Award or this court's decision. No interest rate or additional information is provided.

Pursuant to the Collection Policy, however, "[i]nterest shall be calculated at the rate set forth in Section 6621 of the Internal Revenue Code . . . on interest that has been billed and is overdue." (Collection Policy, art. II, § E). Accordingly, I respectfully recommend that the Clerk of the Court be directed to: (1) calculate prejudgment interest on the arbitrator's award, totaling $817,100.16, from August 18, 2020 to the date of this court's judgment; and (2) be instructed to refer to Section

---

[6] It is unclear how the arbitrator arrived at these interest amounts, as documentation of the auditor's calculations was not provided. However, "even where 'it is unclear what formula or percentage the arbitrator used' in reaching the amount, if the court can infer 'that the arbitrator had some basis — documentary, testimonial or otherwise — on which to determine' the amount of interest, that amount should be awarded." *Trs. of Empire State Carpenters Annuity v. Town & Country Wood Flooring, LLC*, No. 13-CV-40 (DRH) (WDW), 2013 U.S. Dist. LEXIS 128394, at * (E.D.N.Y. Aug. 13, 2013) (quoting *Trs. of the Local 807 Labor-Mgmt. Health Fund v. Express Haulage Co.*, No. 07-CV-4211 (NG), 2008 U.S. Dist. LEXIS 119823, at *16–17 (E.D.N.Y. Sept. 3, 2008)); *see also Trs. Of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. Magnificent Concrete Inc*., No. 17-CV-4285 (DRH) (AYS), 2018 U.S. Dist. LEXIS 120151, at *10 (E.D.N.Y. July 17, 2018) (noting that although Petitioners may not have submitted all documentation used to support the arbitrator's award, "there is no reason to doubt the arbitrator's interpretation of those materials." (citation omitted)). Accordingly, I defer to the arbitrator's calculation here, and respectfully recommend that Petitioner be awarded the $1,6405.22, $1,972.87, and $18,378.09 in respective interest on the unpaid contributions.

[7] Per the CBA, liquidated damages are equal to 20% of the delinquent contributions. (CBA art. II, § 23). $646,744.98 (amount owed) X .2 = $129,329.

6621 of the Internal Revenue Code to determine the requisite interest rate. *See Finkel v. High Volt Elec. Corp. of Am.*, No 19-CV-5028 (NG) (JO), 2020 U.S. Dist. LEXIS 121642, at *9 (E.D.N.Y. June 25, 2020).

Additionally, post-judgment interest is required by statute and is therefore mandatory. 28 U.S.C. § 1961; *see Local 363, United Elec. Workers of Am. V. Laster Lite, Elec., Inc.*, No. 17-CV-0267 (DLI) (SMG), 2018 U.S. Dist. LEXIS 56020, at *2 (E.D.N.Y. Apr. 2, 2018) (citing *Carte Blanche (Singapore) Pre., Lted. v. Carte Blache Int'l, Ltd.*, 888 F.2d 260, 268 (2d Cir. 1989)), *adopted by* 2018 U.S. Dist. LEXIS 76107 (May 3, 2018). The interest rate provided by 28 U.S.C. § 1961 applies to judgments confirming arbitration awards. *Laster Lite*, 2018 U.S. Dist. LEXIS 56020 at *3. Accordingly, I respectfully recommend that post-judgment interest be awarded, from the date final judgment is entered until the date the judgment is paid, at the rate provided by 28 U.S.C. § 1961(a).

### IV.   Attorney's Fees and Costs

The CBA provides that Petitioner is entitled to reasonable attorney's fees and costs expended to collect contributions. (CBA art. III (g)(3); art. IX, § 4). Petitioner seeks an award of $1,170 in attorney's fees and costs arising out of this Petition. (Pet. ¶ 34). "[W]hen a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Drywall & Acoustics of Ne., Inc.,* No. 19-CV-4600 (NG) (RML), 2019 U.S. Dist. LEXIS 196714, at *8–9 (E.D.N.Y. Nov. 12, 2019) (quoting *Int'l Chem. Workers Union v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)). Since Respondent has not abided by the arbitrator's award, and has not appeared in this action, fees and costs are warranted. *Drywall*, 2019 U.S. Dist. LEXIS 196714, at *9.

### a. Attorney's Fees

In the Second Circuit, the prevailing party can recover a "presumptively reasonable fee," which is calculated by multiplying the hours counsel reasonably spent on the litigation, by a "reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). The fee application must be supported by "contemporaneous time records" that specify "for each attorney, the date, the hours expended, and the nature of the work done." *Koon Chun Hing Kee Soy & Sauce Factory v. Kun Fung USA Trading Co.*, No. 07-CV-2568 (JG) (SMG), 2012 U.S. Dist. LEXIS 68117, at *34 (E.D.N.Y. Jan. 20, 2012); *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "The party seeking reimbursement of attorney[s'] fees bears the burden of proving the reasonableness and necessity of the hours spent and rates charged." *Dacas v. Duhaney*, No. 17-CV-3568 (EK) (SMG), 2020 U.S. Dist. LEXIS 107943, at *5 (E.D.N.Y. June 18, 2020) (quoting *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015)), *adopted by* 2020 U.S. Dist. LEXIS 142785 (Aug. 10, 2020); *see generally Carey*, 711 F.2d at 1148.

### i. Reasonable Hours Expended

Petitioner has submitted billing records detailing the dates, hours, and nature of the work performed. Petitioner requests $700 in attorney's fees, reflecting 2 hours of work billed by Nicole Marimon, Esq. ("Ms. Marimon") at $350 per hour.[8]

---

[8] The Petition states "V&A billed the legal assistants' time at a rate of $120 per hour for work performed in connection with this action." (Pet. ¶ 41). However, the Petition requests $700 for attorney's fees, which only reflects the amount requested for Ms. Marimon's time. (Pet. ¶ 43). Further, the billing records do not indicate any work billed for a legal assistant's time, only Ms. Marimon's. (Dkt. No. 1-10). Accordingly, no award can be given for any work that may have been done by a legal assistant. See *Koon Chun Hing Kee Soy & Sauce Factory*, 2012 U.S. Dist. LEXIS 68117, at *34.

It must first be determined if the requested hourly rate is reasonable. A reasonable hourly rate reflects "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. "This rate should be based on rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience and reputation.'" *Dacas*, 2020 U.S. Dist. LEXIS 107943, at *5 (collecting cases) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).

Nicole Marimon ("Ms. Marimon") is a 2014 graduate of Fordham Law School and a partner at Virginia & Ambinder, LLP. (Pet.¶ 29). She has "regularly served as lead counsel for multiemployer benefit plans in ERISA Litigation since joining V&A" in 2015. (Pet.¶ 29). She requests an hourly rate of $350. As for reasonable hourly rates in comparable cases, this District has routinely awarded $200–$350 for partners. *See e.g.*, *Drywall*, 2019 U.S. Dist. LEXIS 196714, at *10 (awarding $225 per hour for associates and $300 per hour for partners in an ERISA case to confirm an arbitration award). Higher fees are reserved for attorneys with more experience than Ms. Marimon. *See e.g.*, *Annuity, Pension, Welfare and Training Funds of the I.U.O.E. Local 14-14B, AFL-CIO v. Falcon Steel Col.*, 2016 U.S. Dist. LEXIS 50585, at *13–14 (E.D.N.Y. Apr. 13, 2016), *adopting* 2016 U.S. Dist. LEXIS 29713 (W.D.N.Y. Mar. 7, 2016) (awarding an hourly rate of $360 per hour to a partner with over twenty years' experience practicing ERISA cases). Indeed, just this year, Ms. Marimon has been regularly awarded only $300 per hour. *See e.g., Trs. of the Ne. Carpenter's Health v. Sabre Tile Corp.*, No. 19-CV-6075 (AMD) (RER), 2021 U.S. Dist. LEXIS. 103622, at *8 (E.D.N.Y. June 1, 2021); *Trs. of Northeast Carpenters Health, Pension Apprenticeship, & Lab. Mgmt. Corp. Funds v. Tiki Indus.*, No. 19-CV-3295 (SJF) (ARL), 2021 U.S. Dist. LEXIS 13689, at *17–18 (E.D.N.Y. Jan. 25, 2021). Accordingly, I respectfully recommend that Ms. Marimon's hourly rate be reduced to $300 per hour.

10

### ii. Reasonable Hours Expended

"The second component of calculating attorney's fees is determining the reasonable number of hours expended on the litigation." *Hernandez*, 2019 U.S. Dist. LEXIS 23756, at *25. "In determining the proper number of hours for which a party should be compensated, the court 'should exclude excessive, redundant or otherwise unnecessary hours.'" *Elvey v. Silver's Crust West Indian Rest. & Grill, Inc.,* No. 18-CV-126 (FB) (VMS), 2019 U.S. Dist. LEXIS 112908, at *13 (E.D.N.Y. July 3, 2019) (quoting *Quaratino v. Tiffany Co.*, 166 F.3d 422, 425 (2d Cir. 1999)), *adopted by* 2019 U.S. Dist. LEXIS 141034 (Aug. 19, 2019). Here, the billing records and accompanying descriptions establish the reasonableness of the two hours expended on this action. Accordingly, based on the above reduced rates, the attorney fees should be adjusted to $600, reflecting the two hours that Ms. Marimon worked at a rate of $300 per hour.

### b. Costs

Petitioner also requests $470 in costs. "The Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process . . . without additional supporting documentation for those costs." *Piedra v. Ecua Rest., Inc.*, No. 17-CV-3316 (PKC) (CLP), 2018 WL 1136039, at *20 (E.D.N.Y. Jan. 31, 2018), *adopted as modified in other respects by* 2018 WL 1135652 (Feb. 28, 2018). Petitioner did not submit any receipts for litigation related expenses. The proof of service, however, indicates that the $40 service charge was paid by Petitioner. (Dkt. No. 10). The Court can also take judicial notice of the $400 filing fee, since it is on the Court's docket. (*See* Entry Dated 9/15/2020: "Civil Case Filing Fee: $400, receipt number ANYEDC-13364890.") For these reasons, I respectfully recommend that Petitioner be awarded $440 in costs.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that the arbitrator's award be confirmed, and Petitioner be awarded $818,120.16, itemized as follows: (1) $566,734.14 in delinquent contributions for the payroll weeks ending August 7, 2019 through and including July 29, 2020 and $16,405.22 in interest thereon; (2) $80,010.84 in delinquent DSP contributions and $1,972.87 in interest thereon; (3) $18,378.09 in additional interest; (4) $129,329 in liquidated damages; (5) $4,250 in fees and costs related to the arbitration; (6) $600 in attorney's fees for this Petition; and (7) $440 in related costs. I additionally recommend that the Clerk of the Court calculate prejudgment interest on the arbitrator's award at the rate set forth in Section 6621 of the Internal Revenue Code from August 18, 2020 to the date of this court's judgment; and post-judgment interest be calculated at the rate provided by 25 U.S.C. § 1961(a) from the date final judgment is entered until the date the judgment is paid. Petitioner's counsel is hereby directed to serve copies of this Report and Recommendation upon Respondent by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Ann M. Donnelly within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: July 7, 2021
Brooklyn, NY